UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN HAMILTON,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>JILL L. BROWN, Warden<br>of San Quentin State Prison,<br><br>　　　　Respondent. | Case No. CIV. F-90-363-OWW-P<br><br><u>Death Penalty Case</u><br><br>Order Denying Petitioner's Pro Se Request for Further Evidentiary Hearing and for New Counsel, and Granting Request to Expand the Record |

Petitioner Michael Allen Hamilton ("Hamilton") indicated his intent to file a pro se request during the re-opened evidentiary hearing held on September 9, 2004. Hamilton stated he was giving the request and supporting documents to his federal habeas counsel for filing. The pro se request was filed October 4, 2004, and the box of supporting documents were lodged. Hamilton's pro se request seeks to supplement the records with the supporting documents, to conduct additional investigation he contends is necessary for his defense, for a stay of the federal proceedings, for a further evidentiary hearing, and for appointment of new counsel. On October 24, 2004, Hamilton requested, by letter, that a copy of the supporting documents be delivered to counsel for Respondent Jill L. Brown ("the State").

Hamilton again seeks investigation that he requested at the December 2003

evidentiary hearing: testing of a similar gun and expert evaluation of the crime scene photos regarding gunshot residue and blowback, investigation into the existence of surveillance tapes from KMart, and obtaining records regarding the condition of his truck tire and from his time in jail before and during trial. Hamilton supports his request for further investigation by observing contradictions between statements and trial testimony of Carolyn and Gilbert, improper actions by the prosecutor and Detective Salazar, and inconsistencies between the police reports and other statements or evidence, including tests done of the truck tire's ability to hold air pressure. Hamilton argues the crime scene, as described by Carolyn and Gilbert and by law enforcement testimony and reports, does not fit the elements of the charged crime.

Hamilton points out various inconsistencies between Gilbert's and Carolyn's statements and their trial testimonies. Those inconsistencies, however, do not absolve Hamilton of involvement in Gwen's murder. Even if Gilbert and/or Carolyn, contrary to their testimony, observed the shooting, or if one of them was the actual shooter, the evidence shows that Hamilton was the instigator of the plan to murder Gwen and obtain the insurance money. He bought the gun, instructed Gilbert and Carolyn on the plan, and traveled with Gwen to Porterville three day in a row in order to facilitate the murder. *See* November 12, 2002 Order (merits denial of actual innocence claim).

Hamilton asserts that discrepancies between various officers' reports about the position and lividity of Gwen's body are inconsistent with Carolyn's and Gilbert's statements about the position of Gwen's body and the time of the shooting. It is unclear what significance the contradictory reports by various officers about lividity have, but the contradictions do not indicate that Hamilton was not responsible for Gwen's death. Regarding the inconsistency between the reported position of Gwen's body by law enforcement and the report of lividity contradictory to body position, Lt. Byrd testified that Hamilton stated when he arrived with his mom and stepfather, he "shook Gwen."

RT 7:1698.

Hamilton contends that discrepancies in various officers' reports and tests of blowback, gunpowder residue, and the condition of the truck tire contradict the conclusion that he killed Gwen.  Hamilton's conclusion that the shooter must have gotten blowback or blood on his/her clothes is inconsistent with the trial testimony of criminalist Steven O'Clair.  RT9:2027-38.  There is no indication in the police reports that any officer at the scene checked the actual pressure of the tire on the GMC.  The only thing the officers' statements indicate is that the GMC tire was not at full pressure, but was not completely flat.  Further, the loss of air pressure during the officers' test would not necessarily remained at the same rate once the tire was removed from the GMC.  This evidence fails to pinpoint the time of Gwen's murder, or to exonerate Hamilton.

Hamilton asserts that the investigation into evidence of other individuals who might have purchased the gun was incomplete.  Hamilton's assertions are not significant in light of the evidence presented at trial: that Brenda Burns identified Hamilton as the one who instigated the purchase of the gun at KMart on October 31, RT8:1800-1806, that Brenda's sister Sharon confirmed that Hamilton took Brenda to KMart on October 31, RT9: 2175, and although Lillian Beardsley was unclear about some of the identities of the persons who purchased the gun on October 31, she remained constant in her identification of Hamilton as one of the group.  RT8:1783-86; RT9: 2158-68.

Hamilton maintains that counsel failed to obtain phone records showing that calls were made to their family and friends telling of the happy news of Gwen's pregnancy, which Hamilton contends would have contradicted the prosecution's assertion that the latest pregnancy put a strain on their marriage, providing a motive for the murder.  There is no evidence, and it is unlikely, that the phone records Hamilton seeks still exist, but even if they do, alone they would be insufficient to prove his

1  ineffective assistance of counsel claim.  The records would not prove his and Gwen's
2  "happiness" about the pregnancy, rather testimony from call recipients would be
3  needed.  Further, Hamilton knew (at least he knew at the time of trial and direct appeal)
4  who the calls had been made to, and he could have requested they be called as
5  witnesses.  However, no statement about such calls was then, or has been to date,
6  submitted.

7       Hamilton contends that no investigation was made into a witness's statement
8  who overheard Carolyn discussing a murder plot during a party, and that threats were
9  made against him to prevent him from disclosing what he heard.  Hamilton also alleges
10  that no investigation was made into Patti Ketchem's 1994 declaration that Hamilton's
11  stepfather told her he knew about the murder plan before it happened, or that she
12  observed Gilbert shower immediately after Carolyn dropped him off on the night of the
13  murder, or that she went to the crime scene with Gilbert, Carolyn and Ron Stafford the
14  morning after the murder to search for clues.  Hamilton also presents evidence
15  contradicting Carolyn's statement that she was afraid of him and showing instead that
16  she was the leader and liked to be in control.

17       None of this evidence implicates an unknown person in Gwen's murder.  Nor
18  does any of this evidence exclude Hamilton from involvement in Gwen's murder.

19       Hamilton concludes that the 145 exhibits referenced as supporting documents to
20  this request represent some of the documentation this court directed his counsel to
21  obtain in support of the issues he raised at the in-camera hearing.  Hamilton asserts
22  these exhibits show that counsel did not review the file as ordered, which constitutes
23  ineffective assistance of counsel.  Hamilton argues that without the requested
24  documents, he was unable to adequately represent that his claims were valid.  Hamilton
25  requests that the court review the exhibits submitted and stay all proceedings pending
26  full investigation of his claims.

1    The supporting documents to Hamilton's pro se request include copies of 137
2 documents.  Eight law enforcement reports and witness interviews were referenced but
3 copies were not attached.  The attached supporting documents include 51 documents
4 which are already part of the record: 18 filed the federal proceeding and 33 which are
5 part of the state record.  Another 75 documents are law enforcement reports (52), and
6 reports or transcripts of witness interviews (23).  The remaining 11 documents are
7 records from San Quentin, the Ninth Circuit, law enforcement, or previously unfiled
8 declarations of lay witnesses.

9    Hamilton's pro se request for additional investigation, for a further evidentiary
10 hearing, for a stay of federal proceedings, and for appointment of new counsel is
11 DENIED.  Hamilton's pro se request to expand the record, and that a copy of the
12 supporting documents be sent to the State, is GRANTED.

14 IT IS SO ORDERED.

15 **Dated:   May 5, 2005**                    **/s/ Oliver W. Wanger**
   b64h1h                                      UNITED STATES DISTRICT JUDGE